IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

00 FEB -1 PM 1:58

U.S. DISTRICT COURT
N.D. OF ALABAMA

ALEX HUBBARD, JR.,

    PLAINTIFF,

v.

                               CASE NO. CV-99-J-1848-S

STREAMLINE MORTGAGE, PHOENIX
FUNDING; GREENTREE FINANCIAL CORP.;
BOB MOSS; GLADYS DEAN MOORE and
PETER SERICO,

ENTERED

FEB   1 2000

    DEFENDANTS.

## **MEMORANDUM OPINION**

This cause comes before the court on Defendants' Motions for Summary Judgment

(doc. 25 and 31) to which Plaintiff has filed a brief in opposition (doc. 40). The Court has

considered said motions, as well as the memoranda in support and opposition thereto and

is of the opinion that no genuine issues of material fact exist and, for the reasons set out

below, that said motions are due to be GRANTED.

## **Undisputed Facts**

In July of 1997, Plaintiff applied for a home equity loan through Streamline

Mortgage in the amount of $29,250.00. Plaintiff's Amended Complaint at ¶ 5. Plaintiff

intended to use the monies received from that loan to consolidate the debts he had

1

43

previously incurred and that were, at the time of this application, under Chapter 13 debt

reorganization. *Id.,* Plaintiff's Amended Opposition to Defendants' Motion for Summary

Judgment[1] ("Plaintiff's Amended Opp.") at Exhibits 8-E, 8-F. The $29,250.00 loan

application reflected 65% of the value of Plaintiff's collateral, a residential home located

at 2100 Fulton Avenue, SW, Birmingham, Alabama.[2]  Plaintiff's Amended Opp. at Exh.

8-A; Affidavit of Alex Hubbard, Jr. at ¶¶ 1, 2. In his loan application, Defendant

Streamline operated as the mortgage broker in exchange for a fee from Phoenix Funding,

the mortgagor. Affadavit of Laura D. Serico, Defendants' Exh. F.

The loan application was reviewed and accepted by Phoenix Funding and a closing

on the loan was held in August of 1997. Plaintiff's Amended Opp. at Exh. 6. The loan

was in the amount of $27,000. Plaintiff's Amended Opp. at Exh. 11. At the closing a

properly executed security agreement in the form of a mortgage was granted by Plaintiff

to Phoenix Funding. Defendants' Exh. E at 3. During the closing, Plaintiff maintains he

---

[1] It should be noted that, despite Plaintiff's failure to move this Court to consider such an amendment, the Court has considered Plaintiff's position as a *pro se* litigant and has considered said amendment despite the procedural defect in deciding the merits of Defendants' motion for summary judgment.

[2] While it is not clear from the evidence submitted in this case, it appears that Plaintiff represented in his application that the Fulton Street residence was his personal residence, a fact later discovered to be untrue. Defendants maintain this caused the percentage of loan to property value to be reduced; Plaintiff argues the reduction was the result of race discrimination. Because neither side has indicated what the normal percentage of loan to property value is with regards to a personal residence as opposed to rental property, the Court can not say as a matter of law whether the rate was improperly reduced. Regardless, this fact is of little consequence to the matter at hand as Plaintiff subsequently entered into a settlement agreement with all Defendants as to any allegations arising out of this loan transaction.

objected to the reduction in the loan amount and a higher interest rate under which he had

to repay the debt.  Plaintiff nevertheless executed all of the loan documents.  After the

loan was finalized, Plaintiff returned to the office where the closing was held to reassert

his complaints regarding the lowered loan amount.  Hubbard Aff. at ¶ 9.  In addition, he

spoke with several individuals at both Streamline and Phoenix Funding.

Apparently alleging race discrimination, Plaintiff threatened to file suit against all

of the companies involved in the loan.  As an alternative to a law suit, Streamline

Mortgage, Phoenix Funding and Plaintiff entered into a settlement agreement.

Defendants' Exh. B.  The agreement was executed on March 2, 1998.  *Id.*  The

agreement, while not an admission on behalf of either Phoenix or Streamline, released

Phoenix and Streamline and their agents, directors, officers, employees, representatives,

and any other related entities from any and all actions, causes of action, suits, debts,

charges, etc., that Plaintiff could assert arising out of the loan between the parties.[3]  *Id.*

Six months after Plaintiff was discharged from his initial Chapter 13 proceeding[4],

Plaintiff apparently suffered from some additional financial difficulty.  In June 1998,

---

[3] Plaintiff has failed to state any cause of action against Defendants' Moss, Sirico and Moore as individuals.  To the extent that Plaintiff's allegations against Defendants' Moss, Sirico or Moore arose in the course of their employment and allegedly pursuant to company policy, such acts would be in their capacity as agents of the Defendants.  Accordingly, and to the extent Plaintiff claims against Moss, Sirico and Moore as individuals, Defendants' Moss, Sirico and Moore's motions for summary judgment (doc. 25 and 31) are due to be and hereby are GRANTED.

[4] Pursuant to Federal Rule of Evidence 201 and on its own motion, the Court takes judicial notice of Plaintiff's first Chapter 13 filing.  Plaintiff filed for Chapter 13 protection on November 6, 1991 and was discharged from the proceeding in December of 1997 (91-08557-CMS-13).

3

Plaintiff again contacted Phoenix. Hubbard Aff. at ¶ 12.[5]  Plaintiff maintains that

employees from Phoenix assured him that Phoenix would work with him if a financial

problem arose.  *Id.* at ¶ 13.  Plaintiff does, however, admit that employees of Phoenix

Funding later informed him that he would have to remain current with his payments to

avoid foreclosure. Hubbard Aff. at ¶ 15.[6]  Accordingly, the Court finds that Phoenix

Funding was acting within the rights secured to them under the contract.  Plaintiff

maintains that Phoenix's institution of foreclosure proceedings forced him to seek

protection with the Bankruptcy Court.  In December 1998, Plaintiff once again filed for

debt reorganization under Chapter 13.  Plaintiff's Amended Opp., Exh. 12-C.

After three months in arrearage, Defendant Phoenix Funding instituted foreclosure

proceedings on the property secured by the mortgage but was unable to do so because of

the automatic stay provision under Chapter 13.  *See* Plaintiff's Amended Opp. at Exh. 12-

C.  Plaintiff maintains this attempt at foreclosure was based on his race, rather than his

failure to make his required payments.  Accordingly, Plaintiff has filed a complaint

against the above named defendants alleging violations of the Equal Credit Opportunity

Act ("ECOA"), 42 U.S.C. §§ 1981, 1982, and 1983, the 13th and 14th Amendments, the

Fair Housing Act ("FHA"), and the common law tort of outrage.  Plaintiff's Amended

---

[5] It is implicit from Plaintiff's affidavit that the phone call was regarding his financial difficulty and repayment of the debt.

[6] Plaintiff had informed the Defendants he would be late with the August, possibly September and October payments due to Phoenix. Hubbard Aff. ¶ 14.

4

Complaint *in passim*.

## Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. P. 56(e). In meeting this

burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.);

6

citing *Anderson*, 47 U.S. at 251-252.

## Legal Analysis

Defendants' motion for summary judgment is granted with respect to any and all allegations arising out of the incidents and/or occurrences prior to March 2, 1998. The Court finds that Plaintiff entered into a properly executed, binding settlement agreement with the above named defendants and is therefore barred from raising any and all issues he may have regarding Defendants prior to the date of that agreement. In granting Defendants' motion on this issue, the Court relies on the significant case law supporting the finality and conclusiveness of settlement agreements. *See e.g., Thomas v. Louisiana,* 534 F.2d 613, 615 (5th Cir.1976); *see also Insurance Concepts, Inc. v. Western Life Ins. Co.,* 639 F.2d 1108, 1111 (5th Cir. (Ga.) 1981); *W.L.G. v. Houston County Board of Education,* 975 F. Supp. 1317 (M.D. Ala. 1997).

As to the allegations arising out of the subsequent foreclosure proceedings by Phoenix against Plaintiff's property secured under the mortgage entered into by Plaintiff, Defendants' motion for summary judgment is due to be granted as well.[7]

Plaintiff maintains Phoenix Funding's refusal to refinance the mortgage already in

---

[7] Though Plaintiff includes all Defendants in his allegations, the Court finds that Streamline, as mortgage broker, could not have and did not engage in any of the wrongful acts of which Plaintiff hereinafter complains. Plaintiff has offered no evidence that Streamline engaged in any illegal activity subsequent to the closing. In fact, the remaining allegations are directed specifically toward Phoenix Funding. Accordingly, Defendant Streamline's motion for summary judgment (doc. 25) is GRANTED on all counts.

arrears, as well as its subsequent decision to attempt foreclosure, was impermissibly based on Plaintiff's race.[8] Hubbard Aff. at ¶ 21. Plaintiff asserts these claims through the Equal Credit Opportunity Act ("ECOA"), 42 U.S.C. §§ 1981, 1982, and 1983, the 13th and 14th Amendments, the Fair Housing Act ("FHA"), and the common law tort of outrage.

Plaintiff's claims under the FHA.

Plaintiff alleges that Defendant Phoenix Funding violated his civil rights under the Fair Housing Act, 42 U.S.C.A. § 3605(a). Plaintiff argues that his suggestion to refinance the mortgage constitutes a "real estate-related transaction" under § 3605(a).[9] Therefore, Plaintiff contends that Phoenix Funding's refusal to refinance his mortgage and subsequent institution of foreclosure proceedings violate § 3605 of the FHA. To prevail on a claim under the FHA then, Plaintiff must prove intentional discrimination on the basis of race. *See Jackson v. City of Auburn, Ala.,* 41 F. Supp.2d 1300, 1313 (M.D. Ala. 1999) *(citing LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412, 425 (2nd Cir. 1995)).

Plaintiff's first claim under the FHA is that Phoenix Funding's refusal of his

---

[8] Plaintiff asserts claims under the ADA and for age discrimination as well. Plaintiff has failed to put forth *any* evidence in support of these claims. Additionally, the facts as alleged do not support even a hint of discrimination on the basis of age and/or because of disability. These claims being entirely without merit, the Court summarily dismisses them without opinion.

[9] 42 U.S.C § 3605(a) states, in its pertinent part, that it is "unlawful for any . . .entity whose business includes engaging in a residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction . . . because of race."

suggestion to refinance his loan was impermissibly decided on the basis of his race.

Assuming without deciding that the refusal to refinance falls within the scope of the FHA

as a "real estate-related transaction," we turn now to the burden Plaintiff must meet to

prove his case.

An action under the FHA implements the *McDonnell-Douglas* burden shifting test

familiar to Title VII. *Secretary, United States Dept. of Hous. and Urban Dev. ex rel*

*Herron v. Blackwell,* 908 F.2d 864,870 (11th Cir. 1990). Accordingly, the Plaintiff may

claim under disparate impact or disparate treatment.   Under this test, the plaintiff has the

initial burden of proving a prima facie case of discrimination by a preponderance of the

evidence.   Where a plaintiff sufficiently establishes a prima facie case, the burden shifts

to the defendant to 'articulate some legitimate, nondiscriminatory reason' for its action.

Finally if the defendant satisfies this burden, the plaintiff must then prove by a

preponderance that the legitimate reasons asserted by the defendant are in fact mere

pretext. *Ex rel. Herron,* 908 F.2d at 870.

To state a claim under § 3605 of the FHA, Plaintiff must show that:  (1) he was a

member of a protected class;  (2) he attempted to engage in a "real estate-related

transaction" with Defendants, and met all relevant qualifications for doing so;  (3)

Defendants refused to engage in the transaction despite Plaintiff's qualifications;  and (4)

Defendants continued to engage in that type of transaction with other parties with

qualifications similar to Plaintiff's. *Hickson v. Home Federal of Atlanta*, 805 F. Supp.

9

1567, 1571-72 (N.D. Ga. 1992); *aff'd* 14 F.3d 59 (11th Cir. 1994).

Plaintiff is black and thus a member of a protected class.  Assuming *arguendo* that Plaintiff's mere suggestion to refinance with Defendant would constitute a "real estate-related transaction" under the statute, Plaintiff has offered no evidence to support a finding that, absent racial animus on the part of the Defendant, he would have qualified for refinancing.   Plaintiff has put forth no evidence of the criteria such as creditworthiness, debt-to-income ratio, etc., by which Phoenix Funding determines eligibility for financing or that Phoenix Funding engages in refinancing loans with other parties at all.  *See Hickson,* 805 F. Supp 1572.  Therefore, Plaintiff can neither claim nor prove he was qualified for refinancing.  Accordingly, Plaintiff fails to meet his initial burden under the *Mc Donnell-Douglas* standard, as such his claim of discrimination for Phoenix Funding's refusal to refinance his loan fails.

Having disposed of Plaintiff's claim for refusing to refinance his loan,  the Court next turns to the Plaintiff's second and final claim under the FHA, that the decision to institute foreclosure proceedings was impermissibly based on race.

As a preliminary matter, counsel for the defendants urge the Court that the FHA does not address nor provide a cause of action for foreclosure proceedings.  Defendants' Brief at 6-7.  Defendants cite in support of their argument *Hickson v. Home Federal of Atlanta*.  *Id.*  In *Hickson,* the district court held Plaintiff failed to state a claim under § 3605(a) where Plaintiff had failed to meet his initial burden of proving he qualified for

the real estate related transaction that he complained was denied to him because of his race. *Hickson,* 805 F.Supp. at 1572. The Court simply did not address discriminatory foreclosure per se; consequently it could not hold that the protections under the FHA do not reach to foreclosures. *See Id.*

In addition, the Court is persuaded by the reasoning found in a case out of the Northern District of Ohio. *See Harper v. Union Savings Association,* 429 F. Supp. 1254, 1259 (N.D. Ohio 1977). In *Harper,* the only case to address specifically whether discriminatory foreclosure is prohibited by § 3605, the Court interpreted § 3605 to find that a cause of action existed under the FHA where a lending institution's collection or enforcement procedures, including the filing and prosecution of a foreclosure action, were racially discriminatory. *See Harper,* 429 F.Supp. 1258. Given the broad construction afforded to the FHA, this Court can not say *Harper* was decided in error. Finding the reasoning in *Harper* persuasive, this Court finds that a claim of discriminatory foreclosure is actionable under this statute.

Having decided an action for discriminatory foreclosure lies in the FHA, the Court turns now to the legal framework governing the analysis of such a claim. As to Plaintiff's claim under § 3605 for discriminatory foreclosure, the Court finds this claim to be mooted by Plaintiff's subsequent filing for protection under Chapter 13. By filing under Chapter 13, Plaintiff has prevented Phoenix Funding from foreclosing on Plaintiff's property. Consequently, Plaintiff can not sustain a claim for a foreclosure that has not,

11

and can not proceed. Inasmuch Plaintiff makes a claim that Phoenix Funding's act of beginning foreclosure proceedings is an action proscribed by 42 U.S.C. 3617,[10] this too fails as Plaintiff can not establish he had a right under §§ 3603, 3604, 3605, or 3606.

Once again analyzing Plaintiff's claim under the *McDonnell Douglas* framework, the Court finds that even if Plaintiff could meet his burden of establishing prima facie discrimination,[11] Plaintiff's contention that Defendant Phoenix Funding foreclosed on his properties because of his race lacks merit because Defendant had articulated a legitimate nondiscriminatory reason for their actions and Plaintiff has failed to show that the reason put forth by Defendants is a pretext for discrimination. It is uncontroverted that Plaintiff was, at the time Phoenix Funding threatened foreclosure, three months in arrears on his mortgage. Having produced legally sufficient evidence of a nondiscriminatory reason for foreclosure, Phoenix Funding has met its burden of production. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527 (11th Cir. 1997)(*citing Burdine,* 450 U.S. at 254-255, 101 S.Ct. at 1094)). Therefore, assuming arguendo that Plaintiff could establish a prima facie case of discrimination, Phoenix Funding has offered sufficient evidence to rebut

---

[10] Section 3617 states: "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 USC § 3617.

[11] Though, for the reasons set out above, the Court seriously questions Plaintiff's ability to make out a prima facie case for discriminatory foreclosure.

Plaintiff's prima facie case.

Finally, Plaintiff can not prove pretext indirectly by showing defendants' proffered justifications are untrue. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed. 207 (1981). Likewise, Plaintiff has failed to come forth with direct evidence of pretext by showing Plaintiff was more likely motivated by racial animus than by its proffered reasons. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 524-5, 113 S.Ct. 2742, 2756 (1993); *see also Simms v. First Gibraltar Bank,* 83 F.3d 1546, 1556 (5th Cir. 1996)(applying the *St. Mary's Honor Center* standard to claims under the FHA). Having failed to establish his prima facie case, Plaintiff's claim under the Fair Housing Act fails as a matter of law. Therefore, Defendants' motion for summary judgment with respect to Plaintiff's claim under the FHA is due to be GRANTED.

Plaintiff's Claim under ECOA.

The ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race." 15 U.S.C. § 1691(a). Plaintiff's claim under this Act fails for two reasons; first, Plaintiff never applied for refinancing, he merely suggested refinancing as an alternative to not paying the installments on his note when due and second, Plaintiff has again failed to meet his initial evidentiary burden.

Plaintiff, who merely suggested refinancing, does not fall under the scope of the

13

ECOA because he is not an 'applicant' as defined by the statute.   Under the ECOA, an

"applicant" means any person who applies to a creditor directly for an extension, renewal,

or continuation of credit, or applies to a creditor indirectly by use of an existing credit

plan for an amount exceeding a previously established credit limit.  15 U.S.C. § 1691a .

Plaintiff does not allege that he ever applied for refinancing, only that it was suggested.

Consequently, Plaintiff's contention that Phoenix Funding's refusal of his suggestion of

refinancing fails to state a claim under the ECOA.

In addition, Plaintiff's claim under the ECOA fails as he has failed to put forth

sufficient evidence in support of this claim.   Proof of intentional discrimination under the

ECOA generally follows the same burden- shifting methodology employed in Title VII

cases. *See Bhandari v. First Nat. Bank,* 808 F.2d 1082, 1100-1101 (5th Cir.1987); *Gross*

*v. Small Bus. Admin.,* 669 F.Supp. 50, 53 (N.D.N.Y.1987), *aff'd,*  867 F.2d 1423 (2d

Cir.1988).   Plaintiff therefore must first establish the prima facie case of discrimination

by showing (1) that he was a member of a protected class; (2) that he was qualified for the

loan; (3) that the bank took some adverse action with respect to the loan; and (4) that the

bank showed a preference for someone outside the protected class. See *Fisher v. Vassar*

*College,* 114 F.3d 1332, 1337 (2d Cir.1997) (en banc).

Again, Plaintiff is black and a member of a protected class.  However, Plaintiff has

failed to put forth any evidence that he was qualified for the loan.  He has presented no

evidence whatsoever of either Phoenix Funding's criteria for refinancing such as

14

creditworthiness, debt to income ratio, etc., or any other evidence regarding qualifications for such a loan. Plaintiff's failure to submit such evidence consequently leaves him unable to prove that he met such criteria. Absent such a showing, Plaintiff can not meet the second prong of the prima facie burden, qualification, and therefore can not sustain a claim under the ECOA.

Plaintiff's claim under 42 U.S.C. § 1981.

In order to prevail under § 1981, Plaintiff must prove purposeful, racial discrimination on the part of Phoenix Funding. *See General Building Contractors Assn., Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). To make such a showing, the *McDonnell-Douglas* framework familiar to civil rights law, is implemented. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377 (1989). As Plaintiff failed to meet the initial burden of establishing a prima facie case under the FHA, he likewise fails to establish a prima facie case under § 1981 where the same factual allegations are applied to an identical legal analysis. Accordingly, Defendants' motion for summary judgment on Plaintiff's claims under § 1981 is due to be GRANTED.

Plaintiff's claim under 42 U.S.C. § 1982.

Section 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey any real and personal property." 42 U.S.C. § 1982. "[I]n

15

sharp contrast to" the Fair Housing Act, "42 USC § 1982 is not a comprehensive open

housing law," *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20

L.Ed.2d 1189 (1968), limited on its face to discrimination with respect to property rights.

Similar to the FHA, § 1982 employs the same legal standard under which a plaintiff may

prevail.  Just as Plaintiff has failed to meet his initial burden under the FHA and § 1981,

the Plaintiff fails to meet his burden under § 1982.  Consequently, Defendants' motion for

summary judgment on the claims under § 1982 are due to be GRANTED.

Plaintiff's claim under 42 U.S.C. § 1983.

Plaintiff makes his final claim of discrimination under 42 U.S.C. § 1983.

Having failed to plead any state action, this claim is completely devoid of merit.

Plaintiff's claim under the tort of outrage:

The tort of outrage was first recognized by the Alabama Supreme Court in

*American Road Serv. Co. v. Inmon,* 394 So.2d 361 (Ala.1980).  In *Inmon,* the Court set

out the elements of the tort of outrage: the plaintiff must prove (1) that the defendant's

conduct was intentional or reckless;  (2) that it was extreme and outrageous;  and (3) that

it caused emotional distress so severe that no reasonable person could be expected to

endure it.  *See Ex Parte Crawford,* 693 So.2d 458, 460*; Thomas v. BSE Industrial

Contractors,* Inc., 624 So.2d 1041, 1043 (Ala.1993), *citing Inmon*, supra, at 365.  With

regard to the second element, extreme has been defined so as to refer to conduct so

outrageous in character and so extreme in degree as to go beyond all possible bounds of

16

decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

*Inmon,* 394 So.2d at 365, citing Restatement (Second) of Torts § 46, Comment d  (1965).

Given the stringent standards placed upon the tort of outrage, recovery is available

only in the most egregious circumstances.  As a consequence, the Alabama Supreme

Court has held in a large majority of the outrage cases reviewed that no jury question was

presented.   *See Brassfield v. Jack McLendon Furniture, Inc.,* 953 F. Supp 1438 (M.D.

Ala. 1996).  In fact, in the many years since *Inmon* was decided, the only categories of

cases presenting a jury question on the outrage claim are:  1) cases having to do with

wrongful conduct in the context of family burials ... 2) a case where insurance agents

employed heavy handed, barbaric means in attempting to coerce the insured into settling

an insurance claim ... 3) a case involving egregious sexual harassment.  *Thomas v. BSE*

*Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993).

In the case at bar, Plaintiff's claim under the tort of outrage fails as a matter of law.

Defendants' exercise of a right secured by the contract between Plaintiff and Defendant,

the right to foreclose in the event of default, does not rise to the level of extreme or

outrageous conduct.  Even assuming that Plaintiff had submitted evidence in support of

the assertions in the complaint, the facts therein offer no evidence he suffered from severe

emotional distress as a result of Defendant's refusal to refinance Plaintiff's and/or

institution of foreclosure proceedings.  *See Whaley v. Sony Magnetic Products, Inc. of*

*America,* 894 F.Supp. 1517, 1525 (M.D. Ala. 1993) (*citing McIsaac v. WZEW-FM Corp.,*

17

495 So.2d 649 (Ala.1986) (plaintiff failed to present evidence of severe emotional distress and therefore could not survive summary judgment on her outrage claim)).

As Plaintiff has failed to make a prima facie showing on the tort of outrage, Defendants' motion for summary judgment as to this count is due to be GRANTED.

### Conclusion

In consideration of all of the foregoing, the court is of the opinion that Defendants' motions are due to be granted.

It is therefore **ORDERED** by the court that Defendants' motions for summary judgment on all counts be and hereby are **GRANTED**. Costs taxed to Plaintiff.

**DONE** and **ORDERED** this the ___/___ day of February, 2000.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE